1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAULA B.,

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

Case No. C21-5226-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting Plaintiff's testimony, the opinions of two doctors, and a lay witness statement, and by making unsupported step five findings. (Dkt. # 14.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.     BACKGROUND

Plaintiff was born in 1970, has a limited education, and has worked as a home attendant. AR at 921. Plaintiff applied for benefits on June 29, 2016, alleging disability as of October 1, 2010. *Id.* at 92, 199–200. Plaintiff later amended the alleged disability onset date to December 1,

2014. *Id.* at 47, 907. Plaintiff's application was denied initially and on reconsideration. *Id.* at 91–120. ALJ Mark Kim held a hearing on August 21, 2018, taking testimony from Plaintiff, a medical expert, and a vocational expert. *See id.* at 43–90. In October 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 27–37.

Plaintiff appealed the ALJ's decision to this Court on September 12, 2019. AR at 887–88. United States Magistrate Judge Richard Creatura reversed the ALJ's decision and remanded the matter for further administrative proceedings. *Id.* at 890–95. Judge Creatura held the ALJ erred in rejecting the opinions of examining physician Patricia Sylwester, M.D. *Id.*

On remand, ALJ Vadim Mozyrsky held a second hearing. AR at 827–60. On December 1, 2020, ALJ Mozyrsky issued a decision again finding Plaintiff not disabled. *Id.* at 907–23. In relevant part, the ALJ found Plaintiff had severe impairments of obesity, thoracic and cervical spine degenerative disc disease, allergic rhinitis, lumbar spine facet arthropathy, and left shoulder rotator cuff syndrome. *Id.* at 910. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with additional exertional, postural, and environmental limitations. *Id.* at 913–14.

The Appeals Council did not assume jurisdiction, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 404.984(d). Plaintiff appealed this final decision of the Commissioner to this Court. (Dkt. # 5.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Erred in Discounting Plaintiff's Testimony

Plaintiff testified she has physical restrictions due to left arm, left knee, neck, and back problems. *See* AR at 61–67, 70–72, 233, 835–37, 845–50. Plaintiff testified she could sit for no more than four hours in an eight-hour day if she were able to alternate between sitting and standing, and could stand for less than two hours. *Id.* at 845–46. She testified she could lift eight to 11 pounds. *Id.* at 846.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or

other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). At this stage, the claimant need only show the impairment could reasonably have caused some degree of the symptoms; she does not have to show the impairment could reasonably be expected to cause the severity of symptoms alleged. *Id.* The ALJ found Plaintiff met this step. AR at 914.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet." *Garrison*, 759 F.3d at 1014–15.

The ALJ rejected Plaintiff's testimony regarding the severity of her impairments for two reasons. First, the ALJ determined Plaintiff's claims were inconsistent with her activities of daily living. AR at 915. Second, the ALJ determined Plaintiff's claims were inconsistent with the overall medical evidence. *Id.* at 915–17. Neither reason withstands review.

The ALJ erred in rejecting Plaintiff's claims as inconsistent with her activities of daily living. An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ noted Plaintiff "could drive, shop, perform some chores, and attend her son's baseball practices." AR at 915. The ALJ further noted Plaintiff "traveled to Hawaii and California after undergoing cervical spine surgery." *Id.* But "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603). Moreover, the evidence does not show Plaintiff engaged in these activities to an extent that contradicted her claims. For example, Plaintiff reported her pain was

worsening due to long term sitting during [her son's] baseball practice." AR at 352. And the ALJ did not identify any evidence that Plaintiff engaged in activities greater than she alleged when she traveled to Hawaii and California. *See id.* at 447, 479. The ALJ's finding that Plaintiff's testimony was contradicted by her activities of daily living was therefore not supported by substantial evidence.

The ALJ also erred in rejecting Plaintiff's testimony as inconsistent with the medical evidence. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which [symptom] testimony is not credible and what evidence suggests the complaints are not credible.").

The ALJ here noted some normal and some abnormal findings. *See* AR at 915–17. The ALJ noted Plaintiff had mild degenerative disc disease at C6/7, and moderate degenerative disc disease at T11/12. *Id.* at 426, 429. The ALJ noted Plaintiff had muscle discomfort with range of motion movement in her cervical spine, but normal muscle tone. *Id.* at 433. None of these findings on their face contradict Plaintiff's statements, nor did the ALJ explain why the normal medical findings in the record were more conclusive than the abnormal findings. The ALJ therefore erred in rejecting Plaintiff's testimony as inconsistent with the medical evidence.

### B.     The ALJ Erred in Evaluating the Medical Evidence

Plaintiff contends the ALJ erred by rejecting the opinions of treating physician Peter Bessas, M.D., and examining physician Dr. Sylwester. An ALJ may reject the uncontradicted

1   opinions of a treating or examining doctor by providing "'clear and convincing' reasons." *Lester*

2   *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th

3   Cir. 1991)). If the treating or examining doctor's opinions are contradicted, the ALJ must

4   provide "'specific and legitimate reasons' supported by substantial evidence in the record for so

5   doing." *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).[1]

6   Dr. Bessas's and Dr. Sylwester's opinions are contradicted by the opinions of Howard Platter,

7   M.D., and J.D. Fitterer, M.D., so the specific and legitimate standard applies. *See* AR at 100–01,

8   115–16, 500–01, 1015–16.

9            *1.      The ALJ Erred in Rejecting Dr. Bessas's Opinions*

10          Dr. Bessas began treating Plaintiff in February 2016, and saw her quarterly through

11   Plaintiff's date last insured of December 31, 2016. *See* AR at 1013, 1113. Dr. Bessas completed

12   a medical opinion form on February 4, 2019.[2] *Id.* at 1012–18. Dr. Bessas opined Plaintiff would

13   need to change positions or posture more than once every two hours, and had a "significant and

14   persistent disorganization of motor function in two extremities, resulting in sustained disturbance

15   of gross dexterous movements, or gait and station." *Id.* at 1015. Dr. Bessas opined Plaintiff could

16   stand and walk for about two hours in an eight-hour workday. *Id.* He opined Plaintiff could sit

17   for about two hours in an eight-hour workday. *Id.* Dr. Bessas opined Plaintiff could sit for 15

18   minutes before changing position, and stand for 15 minutes before changing position. *Id.* He

19   opined Plaintiff would need to lie down once or twice during an eight-hour workday. *Id.* at 1016.

20

21   [1] The Social Security Administration has amended regulations for evaluating medical evidence, but the amended
     regulations apply only to claims filed on or after March 27, 2017 and therefore are not relevant to this case. *See* 20
22   C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017); 20 C.F.R. § 404.1520c (applicable to claims
     filed on or after March 27, 2017).

23   [2] The record indicates Dr. Bessas wrote a letter on October 22, 2020, which the ALJ separately analyzed. *See* AR at
     918, 1203–04. The copy of this letter in the record is unreadable, but Plaintiff does not challenge the ALJ's rejection
     of the opinions in this letter, so the Court does not address the opinions in Dr. Bessas's 2020 letter.

He opined Plaintiff could occasionally twist, rarely stoop or crouch, and frequently climb stairs and ladders. *Id.* Dr. Bessas opined Plaintiff had no limitations in reaching, handling, fingering, feeling, pushing, and pulling. *Id.* He opined Plaintiff could occasionally lift and carry ten pounds, and rarely lift and carry 20 pounds. *Id.*

The ALJ gave Dr. Bessas's opinions little weight. AR at 917–18. The ALJ reasoned Dr. Bessas provided inadequate support for his opinions, and the opinions were inconsistent with imaging studies of Plaintiff's cervical and lumbar spine and with Plaintiff's activities of daily living. *Id.*

The ALJ erred in rejecting Dr. Bessas's opinions as inadequately supported and inconsistent with Plaintiff's imaging studies. An ALJ may reject a doctor's opinions when they are inconsistent with or unsupported by the medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ must specify why the opinions are inconsistent with or unsupported by the medical evidence. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The only medical evidence to which the ALJ pointed in support of his rejection of Dr. Bessas's opinions was imaging studies. AR at 918. Imaging of Plaintiff's cervical spine showed degenerative disc disease at C5/6 and C6/7, with a fusion at C5/6. AR at 367, 369, 1101. Imaging of Plaintiff's thoracic spine showed moderate degenerative disc disease at T11/12, among other abnormalities. *Id.* at 366, 370, 1025. Imaging of Plaintiff's lumbar spine in July 2013 showed mild to moderate degenerative facet arthropathy at L4/5 and L5/S1, while imaging from October 2018 showed advanced facet degeneration at those levels. *Id.* at 371, 1026. The ALJ failed to specify how this evidence was inconsistent with Dr. Bessas's opinions. As a result, the ALJ's finding that Dr. Bessas's opinions were unsupported by or inconsistent with the medical evidence was not a specific and legitimate reason to reject those opinions.

1   The ALJ also erred in rejecting Dr. Bessas's opinions as inconsistent with Plaintiff's

2 activities of daily living. As discussed above, substantial evidence does not support a finding that

3 Plaintiff engaged in daily activities beyond the limitations to which she testified. *See supra* Part

4 IV.A. The same is true here, as substantial evidence does not support a finding that Plaintiff's

5 ability to engage in activities such as limited grocery shopping and sitting at her son's baseball

6 practices is inconsistent with Dr. Bessas's opinions regarding Plaintiff's limitations. The ALJ

7 therefore erred in rejecting Dr. Bessas's opinions.

8    *2. The ALJ Partially Erred in Rejecting Dr. Sylwester's Opinions*

9   Dr. Sylwester examined Plaintiff on October 30, 2016. AR at 497–501. Dr. Sylwester

10 opined Plaintiff could stand and walk for less than two hours, and sit with normal breaks for at

11 least four hours. *Id.* at 500. She opined Plaintiff would need to be able to change positions

12 frequently. *Id.* Dr. Sylwester opined Plaintiff could lift 20 pounds occasionally and ten pounds

13 frequently. She opined Plaintiff could not climb, balance, stoop, kneel, crouch, or crawl. *Id.* Dr.

14 Sylwester opined Plaintiff could not reach above waist level with her left arm, and could only

15 occasionally handle, finger, and feel with her left hand. *Id.* Dr. Sylwester opined Plaintiff had

16 environmental restrictions, such as no exposure to heights, heavy machinery, or temperature

17 extremes. *Id.* at 501.

18   The ALJ gave Dr. Sylwester's opinions "little weight." AR at 919. The ALJ reasoned Dr.

19 Sylwester's opinions lacked support or were inconsistent with the medical evidence. *Id.*

20   The ALJ erred in rejecting Dr. Sylwester's exertional and postural limitation opinions.

21 The ALJ stated Dr. Sylwester's opinions lacked support because Plaintiff had normal strength,

22 gait, and range of motion in most areas. AR at 919. But this was an incomplete portrayal of the

23 record, and the ALJ failed to explain why those normal findings outweighed the abnormal

findings. As discussed above, Plaintiff's imaging studies revealed abnormalities in her cervical, thoracic, and lumbar spine. *See id.* at 366–67, 369–71, 1025–26, 1101. Plaintiff had limited range of motion in her neck at multiple exams. *See id.* at 352, 433, 461, 467, 742. Imaging of Plaintiff's left knee was generally normal, but that does not contradict Dr. Sylwester's opined exertional and postural limitations, which can be attributed to Plaintiff's neck and back problems.

The ALJ partially erred in rejecting Dr. Sylwester's opinions on Plaintiff's reaching, handling, fingering, and feeling limitations. The ALJ reasoned these opinions were "not fully supported by Dr. Sylwester's examination," and were inconsistent with one treatment provider's recommendation of conservative treatment for Plaintiff's left arm impairment. AR at 919. The lack of support finding was reasonable with respect to handling, fingering, and feeling because Dr. Sylwester found Plaintiff had full grip strength, full extremity strength, could do buttons, could touch her thumb to her fingertips, could make a fist, and had full range of motion in her elbows, wrists, thumbs and fingers. *Id.* at 499. However, lack of support was not a reasonable finding with respect to Dr. Sylwester's reaching opinion because Dr. Sylwester found Plaintiff's range of motion in left shoulder abduction was limited to 120 degrees, supporting some level of reaching limitation. *See id.*

The ALJ's other reason here, that Dr. Sylwester's reaching, handling, fingering, and feeling limitations were inconsistent with conservative treatment recommendations, was not specific enough. The ALJ pointed to a January 2016 note from Thomas Stewart, FNP, in which Mr. Stewart examined Plaintiff's left shoulder, among other things. *See* AR at 433. Mr. Stewart found Plaintiff had pain in her left shoulder on palpation and with abduction greater than 90 degrees. *Id.* He prescribed hydrocodone for Plaintiff's cervical radiculopathy, and "[r]eviewed

1    stretching, use of cold/heat" for Plaintiff's left rotator cuff syndrome. *Id.* Absent an explanation,

2    the ALJ's citation to this record was not a specific reason to reject Dr. Sylwester's opinions.

3        In sum, the ALJ erred in rejecting Dr. Sylwester's opinions on Plaintiff's exertional,

4    postural, and reaching restrictions. The ALJ did not err in rejecting Dr. Sylwester's opinions on

5    Plaintiff's ability to handle, finger, and feel. The ALJ did not specifically address Dr. Sylwester's

6    environmental restriction opinions, so he erred to the extent he rejected those, as well.

7        **C.      The ALJ Shall Reevaluate the Lay Witness Statement of Niki Deering**

8        Ms. Deering submitted a statement dated October 14, 2020. AR at 1011. She stated she

9    became friends with Plaintiff in late 2014 or 2015. *Id.* Ms. Deering stated Plaintiff was very

10   active before 2014, but can no longer stand for "long periods of time." *Id.* She stated Plaintiff

11   could no longer garden or do chores. *Id.* Ms. Deering stated, "over the last couple years I have

12   noticed she has a lot of troubles holding her arms up too long when it comes to simple things like

13   washing her hair and blow drying it." *Id.* Ms. Deering stated Plaintiff can no longer sit for "long

14   periods of time." *Id.*

15       In determining disability, "an ALJ must consider lay witness testimony concerning a

16   claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir.

17   2006). The ALJ must "give reasons germane to each witness" before he can reject such lay

18   witness evidence. *Molina*, 674 F.3d at 1111 (internal citations and quotation marks omitted).

19   "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d

20   1113, 1115 (9th Cir. 2009) (quoting *Stout*, 454 F.3d at 1054).

21       The ALJ gave Ms. Deering's statement "partial weight." AR at 920. The ALJ reasoned:

22   "The statement identified difficulties that began before the date last insured, but it addressed

23   issues that began afterwards. It did not clarify which issues began when, and the statement does

not establish functional limitations." *Id.* Plaintiff's date last insured was December 31, 2016. *Id.* at 910.

The ALJ's reasoning has some merit, as Ms. Deering's statement does not set out any clear functional limitations, nor is it confined to Plaintiff's limitations during the alleged disability period. Nonetheless, because this case is being remanded for further proceedings, the ALJ shall reexamine Ms. Deering's statement in light of the reevaluation of the existing evidence, and evaluation of any new evidence.

### D.    The ALJ Erred in Analyzing Step Five

The ALJ erred in evaluating Plaintiff's testimony, and the medical evidence, so erred in analyzing step five of the disability evaluation process. The RFC and hypotheticals to the vocational expert may have contained additional limitations had the ALJ properly considered this evidence. Because the RFC and hypotheticals were incomplete, the ALJ's step five determination was not supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007). The ALJ therefore erred at step five.

### E.    Scope of Remand

Plaintiff asks the Court to remand this matter for an award of benefits. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further

administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings. The evidence the ALJ rejected is not uniform as to Plaintiff's limitations, so the ALJ must resolve the conflicts. For example, Plaintiff testified she could sit for four hours in an eight-hour day if she were able to alternate between sitting and standing, and Dr. Sylwester concurred, whereas Dr. Bessas limited Plaintiff to sitting for about two hours. *See* AR at 500, 845–46, 1015. Similarly, Dr. Sylwester opined Plaintiff was unable to reach above waist level with her left arm, whereas Dr. Bessas opined Plaintiff had no reaching limitations. *See id.* at 500, 1016. The evidence therefore does not conclusively establish disability. The ALJ must resolve these conflicts and translate the evidence into an RFC, from which disability can be determined. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

On remand, the ALJ shall reevaluate Plaintiff's testimony, Dr. Bessas's opinions, Dr. Sylwester's opinions, and Ms. Deering's statement. The ALJ is not required to reevaluate Dr. Sylwester's opinions on Plaintiff's ability to handle, finger, and feel. The ALJ shall reassess Plaintiff's RFC, and all relevant steps of the disability evaluation process. The ALJ shall conduct

all further proceedings necessary to reevaluate the disability determination in light of this opinion.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 6th day of October, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge